### STATIONARY ENGINEER PUB. CO. v. COMERFORD.

(Circuit Court, E. D. New York. May 31, 1907.)

1. COURTS—INJUNCTION—BILL—VERIFICATION—OFFICERS.

Rev. St. § 1778 [U. S. Comp. St. 1901, p. 1211], provides that in all cases in which under the laws of the United States oaths or acknowledgments may be taken before any justice of the peace, they may be also taken by or before any notary public or any of the commissioners of the Circuit Courts, and when certified under the hand and official seal of such notary or commissioners will have the same force as if taken before a justice of the peace. *Held*, that a bill for an injunction in a federal court, verified before a commissioner of deeds of the city of New York, was improperly verified.

2. SAME—PRELIMINARY INJUNCTION—VIOLATION OF CONTRACT.

Where a contract between plaintiff and a trade union for the publication of a trade paper for five years provided that a new contract might be made at the expiration of the original on like terms, and that complainant should have the first right to obtain such contract, provided complainant should have carried out the terms of the agreement to the satisfaction of the association, which thereafter refused to renew the contract, claiming dissatisfaction, complainant was not entitled to a preliminary injunction restraining the association from contracting with another and from refusing to renew the contract because it had satisfactorily performed the old contract, and that the union's refusal to renew was not in good faith, but a mere subterfuge on the part of certain officers in control having a personal animosity against complainant.

Joseph J. Hood, for complainant.
Frank A. Acer (Dennis F. O'Brien, of counsel), for defendant.

CHATFIELD, District Judge. The complainant is a corporation of the state of New Jersey, which for the last five years has been performing a contract made on or about the 31st day of May, 1902, with an organization, the International Union of Steam Engineers, of which the defendant is president. This contract was for the publication of a trade journal for the defendant, and contained numerous details defining the obligations upon both parties. The contract was to expire upon the 31st day of May, 1907, and contained an option, set forth in folio 17, as follows:

"It is further mutually agreed by and between the parties hereto, that a new contract may be made upon the expiration of this agreement upon like terms and conditions as herein contained or upon terms and conditions to be mutually agreed upon and that the said party of the first part shall have first right to obtain said contract, provided that said party of the first part shall have carried out the terms of this agreement to the satisfaction of the party of the second part."

It is shown by the affidavits that this contract was entered into by five trustees, on the part of the union, which is an unincorporated association of individuals, with a principal office in the state of Illinois. This association comprises citizens of more than 35 states of the United States and some of the provinces of Canada, who meet in annual convention once in each year. The last convention was held at Milwaukee, Wis., on September 10, 1906. The association conducts its affairs through a general executive board, which has powers, when the association is not in convention, given to it by the constitution and by-laws of the association. At the conventions prior to the one held in 1906, during the existence of the contract above referred to, resolutions were adopted approving of the manner in which the complainant was performing this contract, and explaining the details of such performance. At the convention in 1906, the trustees, through whom the original contract had been made, and who appear to have taken a large part in the actions of the prior conventions, did not seem to be in control, and that convention neither approved of the contract nor of its extension under the so-called "option," but directed its executive committee to make arrangements for the publishing of the official journal under its own direction, and authorized the said executive board to make the necessary arrangements to carry out this purpose.

The complainant, alleging that it will be damaged in a large amount, and that it has no remedy at law, asks that the defendant be directed to make and deliver a new contract, according to the alleged option, and that the defendant be restrained from publishing, or causing to be published, any book, pamphlet, or magazine as the official journal of said union, and from performing the various acts connected with said publication. The complainant also asks for damages, and upon the complaint and an affidavit, verified by Orrin R. Young, as president of the complainant corporation, dated March 23, 1907, obtained an order to show cause why an injunction pendente lite should not issue, restraining the defendant, as president, etc., during the pendency

of the action, from doing the acts against which an injunction was prayed for in the complaint. Upon these papers an order to show cause was granted upon March 26, 1907, returnable March 29, 1907, forbidding the defendant, or any of the officers, members, employés, and agents of the union, from doing any of the acts named, until the further order of the court. Upon the return day of the motion a long adjournment was had, in order that the defendant might have an opportunity to prepare for argument, and subsequent time was given for the submission of affidavits and for other purposes, until the time approximated that of the termination of the original contract.

As finally submitted, the defendant asks to have the motion for an injunction pendente lite denied, substantially upon three grounds: First. That the original bill of complaint and the affidavit upon which the order to show cause was granted were not verified before an officer authorized to take an oath by the provisions of any United States statute, or by the practice of the United States courts in equity cases. Second. That the action is in reality against the various members of the union, many of whom were citizens of New Jersey, and that there is no diversity of citizenship, and hence no jurisdiction in the federal court. Third. That the contract originally entered into did not contain any binding option; that the union had a right to, and did, reject the proposition to continue the contract for another period of five years; and that the complainant has no right to an enforcement of the option, it being alleged that if it has suffered any actionable damages it can be protected by an action at law.

Under the circumstances it is extremely difficult to determine, from the standpoint of attempting to preserve the interests and rights of the parties, whether a temporary injunction should issue. The complainant will apparently suffer much monetary loss if the contract is taken away from it and another paper is published from the 1st of June, 1907. On the other hand, if the complainant does not make out a prima facie case of breach of contract, and an apparent irreparable injury with no remedy at law, it does not seem proper to give it an injunction pendente lite upon affidavits. The real situation, as far as can be gathered from the affidavits, would seem to indicate that, even if the complainant did perform its contract to the expressed satisfaction of the union for the greater portion of the period for which the contract was to run, yet in the last year those officers and members friendly to the contract have ceased to be in control, and that the union, at least so far as its official representatives can now speak for it, is hostile to a renewal of the contract, and expresses dissatisfaction therewith. It is charged that this dissatisfaction is not well founded, and is merely enmity or personal bias, and that the complainant can show upon a trial that it has performed its contract to the reasonable satisfaction of the union, and in such a manner that it is entitled to an opportunity to make a further contract, under the words—

"that the said party of the first part shall have first right to obtain said contract, provided that said party of the first part shall have carried out the terms of this agreement to the satisfaction of the party of the second part."

It is impossible upon affidavits, and upon a motion for a preliminary injunction, to finally determine whether this alleged option carried with

it any right whatever, or whether upon the trial the complainant can show unwarranted and unreasonable action by the union, to the extent of an arbitrary expression of dissatisfaction, which if the complainant has a right to first consider the proposition for a new contract, would not be within its power.

It is possible under the first ground of objection, viz., that the pleadings and affidavits are not properly verified, to arrive at the same conclusion. The complaint and the affidavit referred to were verified before a commissioner of deeds of the city of New York, and while the complainant, by the obtaining of a subpœna and the filing of a complaint, which need not necessarily be verified, may have properly started its suit, and while the verification, if necessary, could be filed upon a motion to amend, nevertheless, for the purpose of an injunction, the complaint must be considered as an affidavit, and neither it nor the affidavit of Young, above referred to, can be recognized in the United States courts unless verified by an officer authorized to take an oath. Section 1778, Rev. St. [U. S. Comp. St. 1901, p. 1211], is as follows:

"In all cases in which, under the laws of the United States, oaths or acknowledgments may now be taken or made before any justice of the peace of any state or territory, or in the District of Columbia, they may hereafter be also taken or made by or before any notary public duly appointed in any state, district, or territory, or any of the commissioners of the Circuit Courts, and, when certified under the hand and official seal of such notary or commissioner, shall have the same force and effect as if taken or made by or before such justice of the peace."

By section 917, Rev. St. [U. S. Comp. St. 1901, p. 684], power to regulate practice in equity is given to the Supreme Court, but no provision seems to have been made requiring the verification of a bill of complaint, nor allowing the taking of an oath before any officers other than those provided for in section 1778. For this reason the pleadings and papers upon which the motion is made are insufficient.

As to the second ground, that the real parties defendant in this action are the members of the union, it seems needless to consider the question at the present time. The complainant, depending upon section 1919 of the Code of Civil Procedure of New York, which provides that an action may be maintained against the president or treasurer of an unincorporated association, consisting of seven or more individuals, upon any cause of action, for or upon which the plaintiff may obtain such an action against all of the associates, has sued Matt Comerford, as general president of the International Union of Steam Engineers. The action being in equity, and all the parties affected being, possibly, proper parties thereto, it is difficult to determine whether the provisions of the New York Code can apply, and whether this action can be maintained so as to control the entire union through its president. But that question can be left until the defendant has answered or pleaded in the suit, and should not be disposed of upon this preliminary motion.

As to the third ground, it is apparent from the discussion already had that, upon affidavits and such superficial examination as can be given upon a motion for a temporary injunction, it is impossible to

decide the issue which may be raised, as to whether the complainant has any relief because of the alleged unwarranted and unjustifiable breach with reference to giving the complainant an extension of the contract now expiring. The complainant charges that the dissatisfaction expressed is merely a subterfuge on the part of a faction now in control of the defendant. But, nevertheless, it seems to be the lawfully expressed action of the union, in convention assembled, and until a trial is had and evidence taken no decision can be made. Upon the record the alleged option would seem to give the union the right to decide whether the contract has been fulfilled to its satisfaction. So far as is shown by the affidavits, the union has made such a decision, and expressed its dissatisfaction, and the defendant, as president of this union, presumptively is bound to carry into effect and to obey the orders of the convention of the union, at which he was chosen an official for the period covering the time under consideration.

The complainant may be able to prove its case, and as to the merits, or as to the possible issue that can be raised, no decision can now be made. It is sufficient to say that the complainant does not make out a case upon which injunctive relief should be granted pending the trial of the action. At the most the complainant, if it has an enforceable option, and its contract rights have been violated, would seem to be entitled to damages for the breach of its contract. It is debatable whether it can put itself in such a position as to show that it is entitled to enforce specific performance and to restrain the union from refusing to make a new contract with it. A court of equity could hardly accomplish by an injunction the agreement of the parties upon the terms of a contract, or the compelling of any act the terms of which are to be arranged in the future, and based upon the satisfaction of the parties with respect to a matter about which they have already disagreed.

The granting of an injunction pendente lite is in the discretion of the court, and such an extraordinary remedy cannot be given upon the state of facts here shown.